NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1107

M.M.D.

vs.

M.E.D.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

M.E.D. (husband), the former spouse of M.M.D. (wife), appeals from a Probate and Family Court judgment of divorce nisi pursuant to the "no-fault" divorce statute, G. L. c. 208, § 1B. He argues that the judgment must be vacated because the "irretrievable breakdown" provision of G. L. c. 208, § 1B, violates both the First Amendment and the contracts clause, art. 1, § 10, of the United States Constitution.  We affirm.

Background.  The parties married in 1988.  On October 2, 2020, the wife filed a complaint for divorce.  The complaint states that "on or about February 12, 2020, the [parties'] marriage suffered an irretrievable breakdown."  In both his answer to the complaint and subsequent motion to dismiss, the

husband denied that there was "an irretrievable breakdown" of the marriage.  After a hearing, a judgment of divorce nisi entered on June 30, 2023.[1]  The husband filed a notice of appeal on July 24, 2023.[2]

Discussion.  a.  First Amendment.  The husband argues that the "irretrievable breakdown" provision of G. L. c. 208, § 1B,[3] violates the First Amendment because it authorizes unilateral divorce based on one party's subjective viewpoint, and thus "regulates opinion, speech, and thought rather than a general action and mode of conduct."  Consequently, he claims, the statute is void ab initio and that the Probate and Family Court lacked subject matter jurisdiction to grant a divorce on this basis pursuant to the statute.  The claim is without merit.

We review this as a facial challenge to the statute, which "presents a question of law for the court requiring de novo

---

[1] At the hearing, the judge noted that "[t]his matter was before [him] . . . for a pre-trial conference," and that the parties had "a very extensive and productive pre-trial conference . . . and dealt with all of the issues."  However, the appellant did not provide a transcript of the pretrial conference in the record appendix.

[2] On appeal, the husband emphasizes that he is only challenging the constitutionality of the no-fault divorce statute, G. L. c. 208, § 1B, and is not challenging the divorce settlement itself.

[3] General Laws c. 208, § 1B, states, in relevant part: "[a]n action for divorce on the ground of an irretrievable breakdown of the marriage may be commenced by the filing of the complaint."

review."  Barron v. Kolenda, 491 Mass. 408, 415 (2023).  "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."  Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 828 (1995).  "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant."  Barron, supra at 422, quoting Rosenberger, supra at 829.  "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."  Rosenberger, supra at 829.

We first note that the husband cites cases containing generic propositions of law that neither control the issue raised on appeal nor demonstrate how § 1B is violative of the First Amendment.  On that basis alone, the claim fails to warrant appellate relief.  In any event, to the extent that we are able to understand the precise nature of the husband's claims, we discern no basis to vacate the judgment.

"A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully."  McGuire v. Reilly, 386 F.3d 45, 57 (1st Cir. 2004), cert. denied, 544 U.S. 974 (2005), quoting United States v. Salerno, 481 U.S. 739, 745 (1987).  In the First Amendment context, "the burden on the [party challenging the statute] is normally expressed as a

3

showing that the statute admits of no valid application" (quotation omitted).  McGuire, supra at 57.  "The adverse effects of the statute are not relevant to its facial viewpoint . . . only the legislative intent counts" (quotation omitted).  Id. at 60.

The Massachusetts Supreme Judicial Court examined the legislative intent behind § 1B in Caffyn v. Caffyn:

> "As a cause for divorce, an irretrievable breakdown of the marriage is inherently subjective and, contrary to the husband's contention, need not be objectively documented, tested and proven.  The decision that a marriage is irretrievably broken need not be based on any identifiable objective fact; it is sufficient that a party or parties subjectively decide that their marriage is over and there is no hope of reconciliation.  In adopting no-fault divorce, the Legislature implicitly recognized that the parties to a marriage should be able to make personal and unavoidably subjective decisions about marriage and divorce free from overwhelming state control."  441 Mass. 487, 494-495 (2004) (quotations omitted).

We further note that the requirements of § 1B act as "safeguards designed to prevent the Commonwealth from becoming a 'divorce mill for unhappy spouses.'"[4]  Id. at 497, quoting Sosna v. Iowa, 419 U.S. 393, 407 (1975).

In light of the discussion in Caffyn, we are satisfied that the "irretrievable breakdown" provision of § 1B does not

---

[4] Such safeguards include "the requirements that a plaintiff establish domicil in the State . . . and convince the court that he or she had not 'removed into' Massachusetts solely to obtain a divorce, and a six-month waiting period before a hearing on a divorce complaint filed pursuant to § 1B can be obtained."  Caffyn, 441 Mass. at 497.

constitute viewpoint discrimination in violation of the First Amendment.  The legislative intent behind the statute to allow "parties to a marriage . . . to make personal and unavoidably subjective decisions about marriage and divorce free from overwhelming state control," 441 Mass. at 495 (quotation omitted), indicates a "valid application" of § 1B that is free from intentional viewpoint discrimination.[5]  See McGuire, 386 F.3d at 57, 62 (quotation omitted).  A facial challenge to a statute requires that the plaintiff show a legislative intent to discriminate based on viewpoint, and the husband fails to satisfy that standard here.  The claim is thus unpersuasive.[6]

---

[5] Furthermore, the requirements of § 1B ensure that a court does not simply accept a plaintiff's viewpoint that a marriage is irretrievably broken as sole grounds for a no-fault divorce. See Caffyn, 441 Mass. at 497.  The husband had the opportunity to object to the wife's request for a divorce and did so by filing an answer to the complaint and a motion to dismiss disputing the wife's contention that the marriage was irretrievably broken.  The judge did not simply accept the wife's "viewpoint."  Instead, he held a hearing and determined that the wife met her burden of proving that the marriage was irretrievably broken.

[6] We note that the husband provided notice to the Attorney General of his intent to challenge the constitutionality of G. L. c. 208, § 1B.  See Mass. R. Civ. P. 24 (d), 365 Mass. 769 (1974) ("When the constitutionality of an act of the legislature . . . is drawn in question in any action to which the Commonwealth or an officer, agency, or employee thereof is not a party, the party asserting the unconstitutionality of the act . . . shall notify the attorney general within sufficient time to afford him an opportunity to intervene").  There is no indication in the record that the Office of the Attorney General intervened in this case.

b.  _Contract clause_.  The husband also contends that G. L. c. 208, § 1B, allows for the dissolution of marital status without following the normal process of dissolving contracts, and thus impairs the marriage contract in violation of the contract clause, art. 1, § 10, of the United States Constitution.  This contention is unavailing.

In determining whether a state law violates the contract clause, "[t]he threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship" (quotation omitted).  _Energy Reserves Group, Inc_. v. _Kansas Power & Light Co_., 459 U.S. 400, 411 (1983).  In _Trustees of Dartmouth College_ v. _Woodward_, the United States Supreme Court considered marriage and divorces in relation to the contract clause:

> "Th[is] provision of the constitution never has been understood to embrace other contracts, than those which respect property, or some object of value, and confer rights which may be asserted in a court of justice.  It never has been understood to restrict the general right of the legislature to legislate on the subject of divorces.  Those acts enable some tribunal, not to impair a marriage contract, but to liberate one of the parties because it has been broken by the other.  When any State legislature shall pass an act annulling all marriage contracts, or allowing either party to annul it without the consent of the other, it will be time enough to inquire, whether such an act be constitutional."  17 U.S. 518, 629 (1819).

Here, there is no merit to the husband's claim that § 1B violates the contracts clause.  _Trustees of Dartmouth College_, _supra_, makes clear that the contracts clause does not apply to

6

marriage and affirms the state legislatures' authority to grant divorce decrees. The husband points to the language stating that "[w]hen any State legislature shall pass an act . . . allowing either party to annul it without the consent of the other, it will be time enough to inquire, whether such an act be constitutional." 17 U.S. at 629. However, as discussed supra, Caffyn validates § 1B and explains how "[i]n adopting no-fault divorce, the Legislature implicitly recognized that the parties to a marriage should be able to make personal and unavoidably subjective decisions about marriage and divorce free from overwhelming state control." 441 Mass. at 495 (quotation omitted). It is therefore "sufficient that a party . . . subjectively decide[s] that the[] marriage is over and there is no hope of reconciliation." Id. Furthermore, the husband cites no relevant authority to support his argument that § 1B is

violative of the contract clause.  Thus, this claim is likewise without merit.

Conclusion.  For the foregoing reasons, we affirm the Probate and Family Court's judgment of divorce nisi.

Judgment affirmed.

By the Court (Neyman,
Hershfang & Hodgens, JJ.[7]),

*[signature]*

Assistant Clerk

Entered:  May 17, 2024.

---

[7] The panelists are listed in order of seniority.